1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DENNIS ROY WHITE,

11                 Petitioner,              No. CIV S-02-2071 GEB KJM P

12         vs.

13   JAMES A. YATES, Warden,

14                 Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16         Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus under 28 U.S.C. § 2254.   Petitioner raises six claims of error: (1) he was denied due

18   process of law when the trial court refused petitioner opportunity to make a "sufficient

19   allegation" that his prior convictions violated his Boykin-Tahl[1] rights; (2) he was denied a fair

20   trial when the trial court did not look into petitioner's dissatisfaction with his appointed counsel;

21   (3) he was denied effective assistance of counsel when his trial counsel, knowing that petitioner

22   was dissatisfied with him, did not request the court to appoint separate counsel to assist petitioner

23

24         [1] Boykin v. Alabama, 395 U.S. 238 (1969) (holding that in order to show a guilty plea
     was voluntary, the record must clearly show that the defendant waived his constitutional rights to
25   a trial, to confront his accusers and against self-incrimination); In re Tahl, 1 Cal.3d 122 (1969)
     (holding that in California, the defendant, on the record, must explicitly waive the right to jury
26   trial, his right to confront his accusers and his privilege against self-incrimination).

                                            1

1    at any further hearings or during sentencing; (4) he was denied a fair trial when the prosecutor

2    engaged in misconduct; (5) his sentences of twenty-five-years-to-life under California's Three

3    Strikes Law constitute cruel and unusual punishment and violate petitioner's Eighth and

4    Fourteenth Amendment rights; and (6) he was denied due process of law when the trial court

5    failed to instruct the jury that petitioner could not be convicted of all four counts arising from a

6    single transaction.  Respondent has filed an answer, and petitioner has filed a traverse.

7    I.  Factual And Procedural Background

8            Based on a review of the record, the court finds the state Court of Appeal's

9    recitation of the facts of the offense to be accurate:

10           On December 7, 1998, 21-year-old Tanganyika Moore, a sales
             associate for a Macy's department store, was working at a cash
11           register.  While she was on duty, defendant entered the store,
             selected numerous items of merchandise from the men's and
12           children's departments and took them to Moore's register.  As
             security agents watched, she scanned each item of merchandise and
13           then lowered the price on each item.  She also gave defendant two
             shirts at no charge.  As a result, he received $340 in merchandise
14           for $17.44.

15           After ringing up the merchandise, Moore presented defendant a
             credit card slip for the account of Robert H., which defendant
16           signed.  Defendant took the receipt and merchandise out of the
             store, where he was detained and the merchandise was recovered.
17           Defendant and Moore were arrested.  Moore told officers that
             defendant had coerced her into marking down the merchandise for
18           him.

19   Answer, Ex. A (Court of Appeal opinion) at 2-3.

20           In a jury trial, petitioner was convicted of burglary, unlawful use of a computer to

21   execute a scheme to defraud in order to wrongfully obtain property, forgery with intent to defraud

22   and petty theft with a prior conviction.  RT 615-617.[2]  In a bifurcated hearing, the trial judge

23   found that petitioner had three prior strike felony convictions.  RT 642-643.  Based on

24   /////

25   _____

26           [2]  RT refers to the Reporter's Transcript on Appeal, CT to the Clerk's Transcript on
     Appeal, and ACT to the Clerk's Augmented Transcript on Appeal, all lodged with this court.

1  California's Three Strikes Law, petitioner was sentenced to twenty-five-years-to-life.  RT 660-
2  661.

3       Petitioner's appeal was denied by the Court of Appeal and the California Supreme
4  Court.  Answer, Exs. A (Court of Appeal opinion) & B (California Supreme Court opinion).

5       In 2001, petitioner filed a writ of habeas corpus, which was denied by the Court
6  of Appeal and the Supreme Court.  Answer, Exs. C (Court of Appeal decision) & D (California
7  Supreme Court decision).  In 2002, petitioner filed a writ of habeas corpus, which was denied in
8  the Sacramento County Superior Court with a citation to In re Dixon, 41 Cal.2d 756 (1953),
9  among other cases.  Answer, Ex. E (Sacramento County Superior Court decision).  The Court of
10  Appeal and the Supreme Court affirmed the denial without comment.  Answer, Exs. F (Court of
11  Appeal decision) & G (California Supreme Court decision).  Petitioner filed this petition for
12  federal habeas relief on September 20, 2002.

13  II.  AEDPA Standards

14       An application for a writ of habeas corpus by a person in custody under a
15  judgment of a state court can be granted only for violations of the Constitution or laws of the
16  United States. 28 U.S.C. § 2254(a).

17       Federal habeas corpus relief is not available for any claim decided on the merits in
18  state court proceedings unless the state court's adjudication of the claim:

19       (1) resulted in a decision that was contrary to, or involved an
20       unreasonable application of, clearly established federal law, as
         determined by the Supreme Court of the United States; or

21       (2) resulted in a decision that was based on an unreasonable
22       determination of the facts in light of the evidence presented in the
         State court proceeding.

23  28 U.S.C. § 2254(d).

24       Although "AEDPA does not require a federal habeas court to adopt any one
25  methodology," Lockyer v. Andrade, 538 U.S 63, 71 (2003), there are certain principles that guide
26  its application.

3

First, the "contrary to" and "unreasonable application" clauses are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).  It is the habeas petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law.  Woodford v. Visciotti, 537 U.S. 19, 25 (2002).  It is appropriate to look to lower court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 2000).

Second, so long as the state court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no matter how brief.  Lockyer, 538 U.S. at 76; Downs v. Hoyt, 232 F.3d 1031, 1035 (9th Cir. 2000).  A court's "postcard" denial is a decision on the merits.  Gaston v. Palmer, 387 F.3d 1004, 1013 (9th Cir. 2004).  However, when the state court does not issue a "reasoned opinion," this court must undertake an independent review of the claims.  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

Third, in determining whether a state court decision is entitled to deference, it is not necessary for the state court to cite or even be aware of the controlling federal authorities "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2002).  Moreover, a state court opinion need not contain "a formulary statement" of federal law, so long as the fair import of its conclusion is consonant with federal

4

1  law.  Id.

2  III.  Prosecutor's Misconduct and Failure to Instruct Jury Properly (Claims Four and Six)

3        In claim four, petitioner argues that the prosecutor engaged in misconduct during

4  closing arguments by presenting hearsay evidence from Glenn Roberson, who did not testify

5  during the trial, thereby denying petitioner his rights under the Fifth, Sixth and Fourteenth

6  Amendments.  Pet. at 6b (Ground Four).  In claim six, petitioner argues that the trial court erred

7  when it failed to instruct the jury that petitioner could not be convicted on all four counts arising

8  from a single transaction, violating his rights under the Fourteenth Amendment.  Pet. at 6c

9  (Ground Six).  The Sacramento County Superior Court rejected both claims in determining

10  petitioner's habeas petition in state court, relying on In re Dixon, 41 Cal.2d 756 (1953).[3]

11  Answer, Ex. E at 1-2.  The Superior Court held that claims four and six were related to issues

12  reflected in the record on appeal and should have been raised during petitioner's direct appeals.

13  Answer, Ex. E at 2.  The failure to raise them barred the Superior Court from reaching the merits

14  of these claims.  Answer, Ex. E.  As noted, both the Court of Appeal and the California Supreme

15  Court affirmed the state trial court's denial without comment.  Answer, Exs. F & G.

16        A. The Independence and Adequacy of the Dixon Bar

17        In Coleman v. Thompson, 501 U.S. 722 (1991), the U.S. Supreme Court held that

18  federal courts should not review an alleged violation of federal law on habeas review if the state

19  court's decision rests on an independent and adequate state ground.

20          In all cases in which a state prisoner has defaulted his federal
        claims in state court pursuant to an independent and adequate state

21          procedural rule, federal habeas review of the claims is barred
        unless the prisoner can demonstrate cause for the default and actual

22          prejudice as a result of the alleged violation of federal law, or
        demonstrate that failure to consider the claims will result in a

23          fundamental miscarriage of justice.

24  Id. at 750.

25  _____

26      [3]  In Dixon, the California Supreme Court ruled that a petitioner may not raise matters in
a habeas petition that were not raised on direct appeal, although they could have been.

1    In other words, in order for the procedural default doctrine to be applicable, the

2    state procedural rule must provide an "adequate and independent" state law basis on which the

3    state court can deny relief.  Id.  For a state procedural rule to be independent, the state law basis

4    for the decision must not be interwoven with federal law.  Michigan v. Long, 463 U.S. 1032,

5    1040-41 (1983).

6    In Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000), the Ninth Circuit held

7    that California's Dixon rule was interwoven with federal law because application of the Dixon

8    rule depended on a state court determination that federal constitutional error had not been

9    committed.  At the same time, the Ninth Circuit recognized that in In re Robbins, 18 Cal.4th 770,

10   811-12 (1998), the California Supreme Court held that it no longer would consider federal law

11   when deciding whether claims were procedurally defaulted.  Park, 202 F.3d at 1152-53.  The

12   Ninth Circuit noted that Robbins made clear its new approach would not be retrospective and so

13   it did not apply when Park's habeas petition was decided.  Park, 202 F.3d at 1152-53.  Therefore,

14   the Ninth Circuit did not decide if Robbins established the independence of the Dixon rule.  Id.

15   The Ninth Circuit has addressed an application of another procedural bar,

16   following Robbins, in Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003), cert. denied sub nom.

17   Blanks v. Bennett, 540 U.S. 938 (2003).  Bennett holds that because California courts can no

18   longer consider federal law when considering if there is an exception to California's untimeliness

19   bar, a post-Robbins application of the untimeliness bar is based on an independent state ground.

20   Bennett, 322 F.3d at 581-82.

21   Bennett's rationale is equally applicable to the Dixon bar applied to petitioner's

22   habeas claim, as suggested in the Bennett decision itself.  Bennett, 322 F.3d at 582.  In Park, the

23   Ninth Circuit recognized that the California Supreme Court created the Robbins approach "to

24   establish the adequacy and independence of the State Supreme Court's future Dixon/Robbins

25   rulings . . ."  Park, 202 F.3d at 1153 n.4.  Because petitioner's habeas petitions were considered

26   by the California courts in 2001 and 2002,  several years after the Robbins decision issued in

1998, the California courts considered only state law when they determined that Petitioner's

claim was barred under In re Dixon.  Therefore, after Robbins, the Dixon bar is an independent

state procedural ground.

Respondent has pled the independence of the Dixon rule in his Answer to

Petitioner's habeas petition.  Answer at 11-14.  Petitioner, in his traverse, does not make any

arguments and provides no citations to show that the Dixon rule is dependent on federal law.

Traverse at 3-5.  The court finds that the Dixon bar is independent from federal law.

Not only does the Dixon rule have to be independent, it also must be an adequate

state ground.  For a state procedural rule to be adequate, the rule must be "well-established and

consistently applied."  Bennett, 322 F.3d at 583.  In Fields v. Calderon, 125 F.3d 757, 760 (9th

Cir. 1997), the Ninth Circuit held that the Dixon rule was not an adequate state ground.  In

Fields, the Ninth Circuit held that the California Supreme Court had recognized that the Dixon

rule had been inconsistently applied prior to In re Harris, 5 Cal.4th 813 (1993), and therefore, the

Dixon rule was not an adequate state ground in cases decided before the Harris decision.  Fields,

125 F.3d at 763-65.

However, this case deals with an application of the Dixon rule after the Harris

decision.  In Fields, the Ninth Circuit also recognized that Harris, along with a companion case,[4]

was "intended to reestablish California's procedural rules governing state habeas petitions and

clearly define and limit the applicable exceptions."  Fields, 125 F.3d at 763-64.  Harris was

intended to make application of the Dixon rule consistent and uniform in California courts after

1993.

The adequacy of a state procedural rule is determined by considering if a

procedural rule "was firmly established and regularly followed at the time of [the] purported

procedural default."  Calderon v. U.S. District Court, 96 F.3d 1126, 1130 (9th Cir. 1996).  For

---

[4] In re Clark, 5 Cal. 4th 750 (1993).

1   cases involving the Dixon rule, the Ninth Circuit has held that the time of the purported default is

2   the time when the petitioner had the chance to raise claims on direct appeal. Id. at 1131.

3   Petitioner filed his opening brief in the state court of appeal in 2000, see Answer, Ex. A, seven

4   years after Harris made application of the Dixon rule adequate.

5            Respondent has satisfied his burden of initially pleading the adequacy of the

6   Dixon bar.  Answer at 12-14.  This shifts the burden to the petitioner to set forth specific

7   authorities that demonstrate that the Dixon rule was applied inconsistently in 2000, at the time

8   petitioner could have raised his claims on direct appeal.  Bennett, 322 F.3d at 586.  In his

9   traverse, petitioner makes no argument nor produces any evidence to prove that the Dixon rule

10  was applied inconsistently in 2000.  Therefore, the petitioner has not carried his burden.  The

11  court finds that the Dixon rule, applied in 2000, is an adequate state bar.  Because the Dixon bar

12  is independent and adequate, claims four and six are procedurally barred unless there is an

13  exception to the rule.

14            B.  Cause for the Default

15            In Coleman v. Thompson, 501 U.S. 722, 750 (1991), the United States Supreme

16  Court held that an independent and adequate state bar will bar federal habeas review of

17  procedurally barred claims unless the prisoner can demonstrate "cause for the default and actual

18  prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider

19  the claims will result in a fundamental miscarriage of justice."  In his traverse, petitioner makes

20  two claims in an attempt to show cause and actual prejudice.  Traverse at 3-5.

21            First, petitioner argues that good cause exists for his not raising his claims on

22  direct appeal because his appellate counsel refused to raise them.  Traverse at 4.  The Supreme

23  Court has held that an appellate counsel's act or failure to act will not establish cause for

24  procedural default unless it constitutes ineffective assistance under the Sixth Amendment.

25  Murray v. Carrier, 477 U.S. 478, 488 (1986).  In Jones v. Barnes, 463 U.S. 745, 754 (1983), the

26  Supreme Court held that the Constitution does not force appellate counsel to bring every

8

1    colorable claim suggested by a client.  Instead, it is the appellate counsel's duty to sort through

2    the case and present the most promising issues on appeal.  Jones, 463 U.S. at 751-53.  Apart from

3    petitioner's conclusory argument, there is no evidence that petitioner's appellate counsel did not

4    support petitioner's appeal to the best of his ability; therefore, the failure to bring certain claims

5    on direct appeal does not violate petitioner's constitutional rights.  This argument does not

6    establish cause to excuse imposition of the Dixon rule.

7           Second, petitioner argues there is cause to excuse imposition of the Dixon rule

8    because the California Supreme Court ruled on the merits of his claims.  Traverse at 4-5.  After

9    the Sacramento County Superior Court imposed the Dixon bar on petitioner's claims of

10   prosecutorial misconduct and instructional error, both the California Court of Appeal and the

11   California Supreme Court denied petitioner's appeal without discussion.  Answer, Exs. E

12   (Superior Court decision), F (Court of Appeal denial) & G (Supreme Court denial).  Petitioner

13   argues that there is no procedural default if the decision of the last state court rendering a

14   judgment in the case does not clearly and expressly state that the judgment rests on a state

15   procedural bar.  Traverse at 5.

16          In Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991), the Supreme Court held that

17   when the last reasoned opinion on the claim imposes a procedural default, courts should

18   "presume that a later decision rejecting the claim did not silently disregard that bar and consider

19   the merits."  In this case, the last reasoned opinion was the opinion of the Sacramento County

20   Superior Court, which expressly imposed the Dixon procedural default against petitioner's

21   claims.  Therefore, the silent denials of the State Court of Appeal and Supreme Court are

22   presumed to have affirmed the Superior Court's imposition of the Dixon bar.  Petitioner's second

23   argument does not provide cause for excusing the imposition of the Dixon rule.

24          Because the Dixon rule is an independent and adequate state procedural rule and

25   there is no cause to excuse the procedural default, petitioner is barred from bringing claims four

26   and six before this court.

IV. <u>Violation of Petitioner's Boykin-Tahl Rights (Claim One)</u>

Petitioner argues that the trial court violated his Fifth and Fourteenth Amendment rights when the trial court denied petitioner an opportunity to make a "sufficient allegation" that his prior conviction in 1980 for robbery violated his constitutional <u>Boykin-Tahl</u> rights.  Pet. at 5a. The state Court of Appeal rejected petitioner's <u>Boykin-Tahl</u> claim, saying "[d]ue regard for the orderly administration of justice compels the conclusion that defendant's motion was simply too late."  However, even if it had been timely, petitioner's "oral motion failed to allege facts sufficient to justify" holding a <u>Boykin-Tahl</u> hearing on his "motion to strike his 1978 prior conviction."  Because "his two 'strike' convictions in 1980 are sufficient by themselves to support his sentence of 25 years to life, any infirmity regarding the 1978 conviction was harmless."  Answer, Ex. A at 4-5 (Court of Appeal opinion).

Petitioner's claim can be construed in two ways.  On the one hand, to the extent that the petitioner is arguing that the state court failed to conduct a hearing in order to determine if petitioner's <u>Boykin-Tahl</u> rights were violated, petitioner fails to state a claim.

The Supreme Court, in <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969), held that a defendant who pled guilty could attack his guilty plea on appeal on the ground that the record did not establish that the defendant knowingly waived his right to a jury trial, the right to confront witnesses and the privilege against self-incrimination.  <u>Boykin</u> did not create a federal right to a hearing to determine if a petitioner's <u>Boykin</u> rights had been violated when a conviction is used to enhance a sentence.  In California, if a defendant makes a sufficient allegation of <u>Boykin-Tahl</u> error, then the trial court must conduct an evidentiary hearing.  <u>People v. Sumstine</u>, 36 Cal.3d 909, 923 (1984).  There is no federal counterpart to a <u>Sumstine</u> hearing.  <u>Cf. Anderson v. United States</u>, 898 F.2d 751, 753 (9th Cir. 1990).  Therefore, petitioner's claim that, in effect, his rights were violated because the trial court did not hold a <u>Sumstine</u> hearing to determine if his <u>Boykin-Tahl</u> rights had been violated is a state law claim.  "Federal habeas corpus relief does not lie for errors of state law."  <u>Estelle v.McGuire</u>, 502 U.S. 62, 67 (1991) (citation omitted).  Therefore, to

10

1  the extent that petitioner's second claim is based on claims of state law violations, petitioner does

2  not state a legally cognizable claim for federal habeas relief.

3          Alternately, petitioner appears to assert that his Fourteenth Amendment right to

4  due process was violated when the trial court refused to allow him to attack the constitutionality

5  of prior strike offenses.  Traverse at 6.  In <u>Lackawanna County Dist. Attorney v. Coss</u>, 532 U.S.

6  394, 403-04 (2001), the Supreme Court held that a petitioner generally cannot attack the

7  constitutionality of a prior conviction used to enhance a later sentence after the state conviction is

8  no longer open to direct or collateral attack.  The petitioner has not argued that his prior

9  convictions are still open to direct or collateral attack.  Therefore, petitioner's claim attacking the

10  constitutionality of the prior strike offenses is barred.  Because petitioner's claim either is based

11  in state law or is barred by <u>Lackawanna</u>, petitioner has failed to show that the state court's

12  adjudication of this claim was either contrary to or involved an unreasonable interpretation of

13  clearly established federal law.

14  V. <u>Trial Court's Failure to Conduct a Marsden Hearing (Claim Two)</u>

15          Petitioner argues that six letters he wrote to the trial court contained specific

16  claims of ineffective assistance of counsel and conflict of interest and general dissatisfaction with

17  his appointed counsel, Walton.  Pet. at 5b.  Petitioner argues that because he made these

18  complaints, the trial court "neglected its duty to inquire further as to the need to conduct a

19  Marsden[5] hearing prior to continuing with petitioner's sentencing proceedings."  Pet. at 5b.  The

20  state Court of Appeal held that petitioner did not make a direct assertion or clearly imply

21  inadequate performance such that the trial court would be required to conduct further inquiry,

22  which could include holding a <u>Marsden</u> hearing.  Answer, Ex. A at 6-10.

23  /////

24  _____

25     [5] <u>People v. Marsden</u>, 2 Cal.3d 118 (1970) (holding that denial of defendant's pro se
motion for substitution of court-appointed counsel was error because denial of the motion
without affording defendant an opportunity to state the reasons for his request deprived defendant

26  of the right to a fair trial).

A. <u>Factual Background</u>

During trial on Friday, March 3, 2000, the trial judge said that he wanted the record to reflect that he had received three documents from petitioner. He labeled them "motion," "affidavit," and "points and authorities." Walton indicated that he had not read the documents previously and the trial judge ordered that copies be made for Walton. RT 626-628. The petitioner then indicated that he had three more motions for the judge to consider, two on jury misconduct and the third on prosecutorial misconduct. RT 630-631. The judge then asked petitioner about one of the documents that he received in the mail, the one that the judge had labeled as "motion."

> THE COURT: Let me ask you a question on this, that you sent to me. Is there a particular–it's a motion, but what is the motion to achieve?
> THE DEFENDANT: The motion is to achieve that my attorney was working out of the same office with the district attorney, having me waive time because he said the district attorney was not ready.
> THE COURT: Okay. You're talking about Mr. Roehr?
> THE DEFENDANT: Mr. Roehr.
> THE COURT: Works in the same office as—
> THE DEFENDANT: They were working together on this situation, denying me of my Constitutional rights.
> MS. GISSING: Mr. Roehr is a public defender.
> THE DEFENDANT: Mr. Roehr is a public defender.
> THE COURT: I know that.
> THE DEFENDANT: Working with Ms. Donna Gissing to get me 25 years to life. He was telling me I had to waive time because Ms. Gissing was not ready.
> THE COURT: Let me ask you a few questions. We'll argue this at the next hearing, but–that's okay. I have read it, and I understand what you're saying. The only question I have is, did you mean that Mr. Roehr and Ms. Gissing–your allegations are that they work out of the same office or that they simply–
> THE DEFENDANT: From the start, Ms. Moore was wanting to tell the People that–
> THE COURT: Sir, just wait a minute. You're not listening to me. –or are you saying that they worked together?
> THE DEFENDANT: Yes, sir.
> THE COURT: Okay. All right. Now I understand.

CT 632-633. That was the end of any substantive discussion about the "motion."

/////

1          After this discussion, Walton said that he had not seen the three new motions that

2   petitioner had brought to court.  The court made the documents part of the case file, but declined

3   to have them filed as motions unless Walton decided to file them as motions.  RT 634-635.  The

4   petitioner then asked the judge if Walton was his attorney and after the judge answered in the

5   affirmative, asked the judge if petitioner could make Walton file the motions.  The court

6   responded that it was not necessarily the case that if petitioner asked Walton to file the

7   documents, Walton had to do so.  RT 635.  Petitioner indicated he would like Walton to file the

8   documents because they concerned his rights.  The court responded by telling petitioner to give

9   the documents to Walton and then Walton could determine if they would be filed.  Petitioner

10  agreed and that concluded the matter.  RT 635-637.  During the next and final hearing, the

11  documents were discussed and the three documents that had not been placed in the case file

12  previously were added to the file at that time.  However, at no time did the court or the petitioner

13  discuss the allegations made in the "motion."  RT 644-649.  At no time during the entire

14  discussion of the "motion" or at any time during discussions about the documents in general did

15  the petitioner request a new attorney or ask the court to look at allegations of ineffective

16  assistance of counsel against Walton, petitioner's trial counsel at the time.

17          B.  Analysis

18  _____The Sixth Amendment does not guarantee a "meaningful relationship" between a

19  client and his attorney.  Morris v. Slappy, 461 U.S. 1, 14 (1983).  However, under the Sixth

20  Amendment, "a state trial court has no discretion to ignore an indigent defendant's timely motion

21  to relieve an appointed attorney."  Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000) (en

22  banc).  The constitutional question that the federal courts have to answer is: did the trial court's

23  error in ignoring a timely motion for a new attorney violate the petitioner's constitutional rights

24  because the attorney-client relationship suffered from a total lack of communication or other

25  serious impediment that caused the relationship to fall short of what is required by the Sixth

26  Amendment.  Schell, 218 F.3d at 1026.  The Sixth Amendment requires that the states provide a

1  way for a defendant to move for a new attorney when he feels his relationship with his attorney is

2  impeded in some way.  Schell, 218 F.3d at 1025.

3          In California, the way that a defendant brings a motion for a new attorney is to

4  make a Marsden motion.  California courts do not "require a proper and formal legal motion,"

5  but "some clear indication by defendant that he wants a substitute attorney" is necessary.  People

6  v. Lucky, 45 Cal.3d 259, 281 n.8 (1988).

7          Petitioner argues that his "motion" makes it clear that he wanted a new attorney.

8  However, in the "motion," he alleges only that Walton did not interview witnesses, work on

9  petitioner's case and was "best friends" with petitioner's former trial counsel, Roehr.  ACT 4.

10  Petitioner also writes:  "It also impaired the attorney client relationship."  Id.  These vague

11  allegations are not a clear indication that petitioner wanted a new attorney appointed.

12          The trial court specifically asked petitioner what his motion was meant to achieve.

13  RT 632.  This was the perfect moment for petitioner to speak up and say that he wanted his

14  current trial counsel replaced.  Instead petitioner discussed the actions of his former trial counsel

15  and never asked the court to replace his current trial counsel.  Therefore, petitioner never clearly

16  indicated that he wanted a substitute attorney.  There is no Sixth Amendment violation because

17  the trial court did not ignore a timely motion or a clear indication that the petitioner wanted a

18  new attorney appointed.  Petitioner has failed to show that the state court's adjudication of this

19  claim was either contrary to, involved an unreasonable interpretation of clearly established

20  federal law or involved an unreasonable determination of fact.

21  VI.  Ineffective Assistance of Trial Counsel (Claim Three)

22          Petitioner claims that his trial counsel failed to provide effective assistance of

23  counsel in four areas: (1) a conflict of interest kept trial counsel from giving effective assistance;

24  (2) by failing to bring a motion concerning petitioner's allegations of conflict of interest; (3) by

25  failing to request that the trial court consider appointing new counsel to represent petitioner

26  during sentencing; and (4) by failing to bring a motion claiming ineffective assistance of counsel.

1  Pet. at 6a; see also Traverse at 18-21.  The state Court of Appeal refused to speculate about

2  Walton's reasons for not requesting the appointment of substitute counsel.  "In this case, the

3  record sheds no light on why Walton did not request the appointment of substitute counsel at

4  sentencing.  We are not permitted to speculate as to his reason or reasons for that omission."

5  Answer, Ex. A at 11.

6          The federal law on claims of attorney ineffectiveness is well established:

7          First, the defendant must show that counsel's performance was
           deficient.  This requires showing that counsel made errors so
8          serious that counsel was not functioning as the 'counsel'
           guaranteed the defendant by the Sixth Amendment.  Second, the
9          defendant must show that the deficient performance prejudiced the
           defense.

10

11  Strickland v. Washington, 466 U.S. 668, 687 (1984).  "[T]he performance inquiry must be

12  whether counsel's assistance was reasonable considering all the circumstances."  Id. at 688.  The

13  court then must determine whether in light of all the circumstances, the identified acts or

14  omissions were outside the wide range of professional competent assistance.  Id. at 688-89.  It is

15  also petitioner's burden to establish prejudice:  A defendant "must show that there is a reasonable

16  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

17  been different.  A reasonable probability is a probability sufficient to undermine confidence in

18  the outcome."  Id. at 694.  This evaluation must be based on  the totality of the evidence before

19  the jury, recognizing the probability of a different outcome is less likely in a case "with

20  overwhelming record support."  Id. at 695, 696.  Petitioner has to meet both prongs of the

21  Strickland test in order to show ineffective assistance of counsel.

22          In this case, petitioner claims that a conflict of interest caused his trial counsel's

23  deficient performance and that the deficient performance prejudiced the outcome of his case.  In

24  one of his letters to the trial court, petitioner claimed there was a conflict of interest  because his

25  trial attorney, Walton, was "best friends" with petitioner's former trial attorney, Roehr, and that

26  Walton "did not . . . do any work on his case, except what Thomas Roehr told him to do."  ACT

1    at 4.  Under the Sixth Amendment, a criminal defendant has the right to be represented by

2    counsel free from conflicts of interests.  Wood v. Georgia, 450 U.S. 261, 271 (1981).  To

3    establish a Sixth Amendment violation based on a conflict of interest, petitioner must show that

4    trial counsel actively represented conflicting interests and that this conflicting representation

5    adversely affected counsel's performance.  Cuyler v. Sullivan, 446 U.S. 335, 350 (1980).  If the

6    petitioner can show that a conflict of interest actually affected his trial counsel's performance,

7    then he does not have to demonstrate prejudice to obtain relief.  Id. at 349-50.

8         Based on the record here, petitioner has provided, petitioner has not demonstrated

9    that a conflict of interest existed in this case.  There is not a conflict of interest simply because

10   petitioner's current trial attorney and his previous trial attorney might be friends.  Also, there is

11   not a conflict of interest just because the petitioner was dissatisfied with how Walton was

12   handling his case.  Petitioner appears to have felt that Walton did not interview any witnesses on

13   his behalf and did not do any work on the case because Roehr told him not to.  However, there is

14   no evidence that Roehr had any control over Walton's strategic decisions in this case.  To the

15   contrary, the record contains a declaration from Walton to which petitioner has not objected, that

16   his work on the case was independent of Roehr.  Answer, Ex. I (declaration of Laurence Walton).

17   Without evidence that Walton was following Roehr's orders regardless of the best interests of his

18   client, bare allegations of a possible conflict of interest are not enough to establish ineffective

19   assistance of counsel.  Morris v. California, 966 F.2d 448, 455 (9th Cir. 1991).  Because

20   petitioner cannot establish that Walton actively represented conflicting interests, petitioner

21   cannot claim that a conflict of interest actually affected Walton's performance.

22        Petitioner also claims ineffective assistance based on trial counsel's failure to

23   request that the trial court consider appointing new counsel to represent petitioner at sentencing,

24   by failing to bring a motion concerning petitioner's allegations of conflict of interest and by

25   failing to bring a motion claiming ineffective assistance of counsel.

26   /////

16

1    Petitioner has not shown that had his trial counsel brought any of the proposed

2   motions that the outcome of his criminal proceeding would have been different.  There was no

3   actual conflict of interest, so a motion concerning petitioner's allegations of conflict of interest

4   would not have affected the result of the proceeding.

5    Additionally, as discussed below, petitioner has not shown that Walton provided

6   ineffective assistance of counsel during his trial; therefore, bringing  motions for ineffective

7   assistance of counsel and appointment of a new attorney would have been futile.  In his letters to

8   the trial court, petitioner claimed that Walton was providing ineffective assistance of counsel

9   because Walton did not interview witnesses on petitioner's behalf or do any work on his case.

10   ACT 4.  One of counsel's duties is investigation, but "the duty to investigate and prepare a

11   defense is not limitless: it does not necessarily require that every conceivable witness be

12   interviewed" and such claims "must be considered in light of the strength of the government's

13   case."  Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (internal quotations, citations

14   omitted), amended on denial of rehearing, 253 F.3d 1150 (9th Cir. 2001).  Petitioner cannot bear

15   his burden of showing ineffective assistance of counsel by presenting "merely conclusory

16   statements," United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984), but rather must

17   tender affidavits from the witnesses counsel neglected to interview or call, showing the "helpful

18   testimony for the defense" they could have presented.  Dows v. Wood, 211 F.3d 480, 486 (9th

19   Cir. 2000); Bragg, 242 F.3d at 1088.  In this case, petitioner has presented only conclusory

20   statements and has not provided affidavits of witnesses that could have testified on his behalf

21   during the trial.  Petitioner has not shown ineffective assistance of trial counsel through a failure

22   of the duty to investigate.  Without evidence of ineffective assistance of counsel, it is not

23   reasonably probable that petitioner's bringing motions for new counsel or ineffective assistance

24   of counsel would have changed the result of the proceeding.

25    In sum, petitioner has not met the Strickland test of showing that counsel's

26   performance was deficient or that, even if counsel's performance was deficient, that the result of

1   the proceeding would have been different with effective assistance or assistance of different

2   counsel.  Petitioner has failed to show that the state court's adjudication of this claim was either

3   contrary to or involved an unreasonable interpretation of clearly established federal law.

4   VII. Cruel and Unusual Punishment (Claim Five)

5           Petitioner claims that his four sentences of twenty-five-years-to-life under

6   California's Three Strikes Law constitute cruel and unusual punishment under the Eighth and

7   Fourteenth Amendments.  Pet. at 6b.  Petitioner did not raise this claim on direct appeal.[6]

8           Petitioner claims he received four separate sentences of twenty-five-years-to-life

9   under California's Three Strikes Law.  Pet. at 6b.  While Petitioner was convicted of four

10  separate crimes, he was sentenced to twenty-five-years-to-life under California's Three Strikes

11  law on count one and sentence on the remaining three counts was stayed under California Penal

12  Code § 654.  CT 308.  Contrary to petitioner's assertion, the trial court only imposed a single

13  sentence of twenty-five-years-to-life under California's Three Strikes Law on petitioner.

14          Petitioner's claim is properly construed to state that his single sentence of twenty-

15  five-years-to-life constitutes cruel and unusual punishment under the Eighth and Fourteenth

16  Amendments.  Pet. at 6b.  In Lockyer v. Andrade, 538 U.S. 63 (2003) and Ewing v. California,

17  538 U.S. 11 (2003), the Supreme Court considered California's Three Strikes law.  In Ewing, a

18  direct appeal from a judgment of conviction, the Supreme Court recognized the longstanding

19

20          [6]  When petitioner raised this claim on state habeas review, the Sacramento County
    Superior Court held that it was barred by In re Dixon, 41 Cal.2d 756 (1953), while noting that a
21  change in the law based on a Ninth Circuit case issued after petitioner's direct appeals (Andrade
    v. Attorney General, 270 F.3d 743 (9th Cir. 2001), reversed by Lockyer v. Andrade, 538 U.S. 63
22  (2003)), might possibly provide an exception to the Dixon bar.  Answer, Ex. E (Superior Court
    opinion) at 1. The Superior Court's resolution of the Eighth Amendment claim was not disturbed
23  by the California Court of Appeal and California Supreme Court.  Answer, Exs. F (Court of
    Appeal opinion) & G (Supreme Court opinion). Petitioner raised this claim in his petition for a
24  writ of habeas corpus and the state Attorney General responded with an argument based on the
    merits of the claim, not based on petitioner's state procedural default. Pet. at 6b; Answer at 38. In
25  Francis v. Rison, 894 F.2d 353, 355 (9th Cir. 1990), the Ninth Circuit held that a state waives
    procedural default by failing to raise it in federal court. Because the state failed to raise
26  procedural default as to this claim in its answer, the court reaches the merits of this claim.

"tradition of deferring to state legislatures in making and implementing" policy decisions about sentencing laws.  538 U.S. at 24.  And while the Court also recognized a "narrow proportionality principle," it held the Eighth Amendment "does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are grossly disproportionate to the crime."  Id. at 23 (internal quotations omitted).

The Court did not find Ewing's sentence of twenty-five-years-to-life to meet the standard of gross disproportionality.  His commitment offense—grand theft—was based on his appropriation of $1,200.00 worth of merchandise from a golf pro shop.  It was committed while he was on parole from a sentence for burglary and robbery.  Id. at 20, 28.  His record included "numerous misdemeanor and felony offenses," most of them committed while on probation or parole, and nine prison terms.  Id. at 30.  The Court concluded: "To be sure, Ewing's sentence is a long one.  But it reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated."  Id.

Lockyer addressed the interaction of the AEDPA and the Court's Eighth Amendment jurisprudence.  As in Ewing, the Court recognized the lack of clarity in its earlier Eighth Amendment cases but described the "governing legal principle" in such cases to be "gross disproportionality."  Lockyer, 538 U.S. at 72.  The Court ultimately found the California Court of Appeal had not applied federal law in an unreasonable fashion or reached a result contrary to federal precedent on indistinguishable facts.  Id. at 74.  As a result, it upheld Andrade's sentence of fifty-years-to-life following his convictions for two counts of grand theft stemming from two incidents of shoplifting and the findings he had suffered three prior convictions for residential burglary.  Id. at 65.  His record also included two federal drug convictions, a federal escape charge, and some misdemeanor thefts.  Id. at 66-67.

/////

/////

1   In light of <u>Lockyer</u> and <u>Ewing</u>, whether the state Court of Appeal's determination

2   was an unreasonable application of clearly established federal law depends on the severity of the

3   offense, the availability of parole and length of sentence, and the impact of recidivism. <u>Id.</u> at 72.

4   In this case, petitioner was arrested for stealing $340.00 of merchandise from a

5   Macy's store. While there was no violence related to the crime itself, petitioner's accomplice,

6   Moore, stated that she only went along with the property crimes because the petitioner coerced

7   her into helping him. Answer, Ex. A (Court of Appeal opinion) at 2-3; CT 280. While the

8   offenses themselves - second-degree burglary, computer fraud, credit card fraud and petty theft -

9   are not violent, they are serious premeditated property crimes that petitioner carried out by

10  coercing an accomplice to help him.

11  As a third striker, petitioner will not earn conduct credit on his sentence and thus

12  will not be eligible for parole until he has served more than twenty-five years.[7] <u>Contra</u> <u>Rummel</u>

13  <u>v. Estelle</u>, 445 U.S. 263, 280 (1980) (life sentence for small theft ameliorated by Texas policy of

14  liberal grant of good time that might make person eligible for parole in twelve years).

15  Nevertheless, the severity of the sentence alone will not make it grossly disproportionate.

16  <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991) (sentence of life without the possibility of parole for

17  possession of large amount of drugs did not violate Eighth Amendment).

18  Finally, there is the impact of petitioner's recidivism and the severity of

19  petitioner's prior crimes. <u>See</u> <u>Ramirez v. Castro</u>, 365 F.3d 755, 769 (9th Cir. 2004). Petitioner

20  has a lengthy criminal history that goes back more than two decades. This criminal history

21  includes: a conviction for grand theft person in 1979; a conviction for two counts of robbery and

22  two counts of false imprisonment in 1980; a conviction for giving false identification to a peace

23  officer in 1985; a conviction for robbery with use of a deadly weapon, a metal cane, in 1987; a

24  conviction for two counts of receiving stolen property with a prior prison term enhancement in

25

26  [7] A third striker is not permitted to earn custody credits against his minimum sentence.
<u>In re Cervera</u>, 24 Cal. 4th 1073 (2001).

1  1990; a misdemeanor conviction for possession of a controlled substance in 1992; a conviction

2  for receiving stolen property in 1993; and a conviction for possession of a fraudulent check in

3  1996, for which petitioner was paroled in August 1998.  CT 283-286.  Petitioner's prior prison

4  commitments and numerous jail terms have not had a rehabilitative impact on his behavior.  Less

5  than six months after petitioner was paroled from prison most recently, he committed the

6  burglary, computer fraud, credit card fraud and forgery convictions that qualified him to be

7  sentenced as a three-strike offender.  CT 86.  As the Supreme Court has observed:

8   One in [defendant's] position has been both graphically informed
   of the consequences of lawlessness and given an opportunity to
9   reform, all to no avail. Article 63 [the Texas recidivist statute] thus
   is nothing more than a societal decision that when such a person
10  commits yet another felony, he should be subjected to the
   admittedly serious penalty of incarceration for life, subject only to
11  the State's judgment as to whether to grant him parole.

12  Rummel v. Estelle, 445 U.S. at 278.  Petitioner, too, has been "informed of the consequences of

13  lawlessness," but chose to ignore them.  This case does not raise a presumption of gross

14  disproportionality.  See Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004), petition for cert.

15  filed, ___ U.S.L.W. ___ (U.S. Feb. 10, 2005) (No. 04-8660); compare Ramirez, 365 F.3d at 768

16  ("three strikes" sentence grossly disproportionate to the underlying petty theft with a prior theft

17  when priors had been shoplifting incidents in which defendant pushed a security guard and a

18  confederate drove over the foot of a different security guard and defendant had served no time in

19  prison).  Petitioner has failed to show that the state court's adjudication of this claim was either

20  contrary to or involved an unreasonable interpretation of clearly established federal law.

21          IT IS HEREBY RECOMMENDED petitioner's application for a writ of habeas

22  corpus be denied.

23          These findings and recommendations will be submitted to the United States

24  District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within

25  twenty days after being served with these findings and recommendations, any party may filed

26  written objections with the court and serve a copy of all parties. Such a documents should be

1  captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the

2  objections shall be served and filed within five days after service of the objections. The parties

3  are advised the failure to file objections within the specified time may waive the right to appeal

4  the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5  DATED:  July 19, 2005.

6

7

8                                                           UNITED STATES MAGISTRATE JUDGE

9

10

11

12  whit2071.157

13

14

15

16

17

18

19

20

21

22

23

24

25

26